IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

COLUMBIA RIVER TECHNOLOGIES 1, LLC,

                Plaintiff,

  v.                                                  OPINION and ORDER

BLACKHAWK GROUP LLC, COIN MINER, LLC,              19-cv-385-jdp
and TIMOTHY A. CARNES,

                Defendants.

---

At its heart, this is a straightforward breach-of-contract case. The disputed issues at this point are what remedies are available to plaintiff, and from whom.

Plaintiff Columbia River Technologies 1, LLC paid defendant Coin Miner, LLC, more than $400,000 to obtain some specialized high-power computers to be used as bitcoin mining equipment. But Coin Miner was just a middleman. It arranged to purchase the equipment from defendant Blackhawk Group, LLC. Blackhawk accepted payment but failed to deliver the equipment. Blackhawk offered Coin Miner a refund, but Coin Miner refused the refund at Columbia River's direction. Now Columbia River asserts a breach of contract claim against all defendants, an unjust enrichment claim and conversion claim against Blackhawk and Timothy Carnes (Blackhawk's managing member), and a civil theft claim against Carnes. Coin Miner and Blackhawk assert cross claims against each other.

The parties have filed motions for summary judgment on some of the issues in the case. Blackhawk and Carnes move for summary judgment on all of Columbia River's claims. Dkt. 94. Columbia River moves for summary judgment on its claim for conversion against Blackhawk

and its claim for civil theft against Carnes. Dkt. 185. No party moves for summary judgment on any claims by or against Coin Miner.[1]

Blackhawk and Carnes contend that Columbia River's only remedy is its breach of contract claim against Coin Miner. Columbia River doesn't deny that it is entitled to full relief against Coin Miner, but it contends that it is entitled to relief against the other defendants as well.

The court agrees with Blackhawk and Carnes. Columbia River's remedy lies with Coin Miner, the only defendant with which Columbia River had a contract and the only defendant that Columbia River had any communication with. Columbia River understandably feels aggrieved by Blackhawk. But it is Coin Miner, not Blackhawk, that made a promise to Columbia River, so it is Coin Miner that would be liable for breaking that promise. Blackhawk may also be liable, but only to Coin Miner for breaking its promise to Coin Miner. The court will grant Blackhawk and Carnes's motion for summary judgment on Columbia River's claims.

UNDISPUTED FACTS

The following facts are undisputed.

Columbia River is a "bitcoin mining operation," Dkt. 129, ¶ 2, which means that it earns bitcoin currency for performing computations used by the bitcoin cryptocurrency network. Its members are domiciled in Washington, Colorado, California, Florida, Texas, and New York. Dkt. 135, ¶ 1. Blackhawk's primary business is operating a warehouse in Fort

---

[1] Also before the court are Columbia River's motion for leave to file a surreply brief, Dkt. 142, and Columbia River's motion for leave to file an amended complaint to clarify its jurisdictional allegations, Dkt. 144. The court will grant those two motions.

Atkinson, Wisconsin for bitcoin mining machines. Occasionally, Blackhawk buys and sells mining equipment. Its members, including Timothy Carnes, are domiciled in Michigan and Wisconsin. *Id.*, ¶ 2. Coin Miner's members are domiciled in Ohio. *Id.*, ¶ 3.

In April 2019, Columbia River began working with Coin Miner to find bitcoin mining machines to purchase. Coin Miner then contacted Carnes about purchasing approximately 2,000 miners from Blackhawk. In response, Blackhawk located miners that were available for purchase in Texas and Montana from AM Consulting. Blackhawk didn't tell Coin Miner that it was obtaining the miners from a third party.

Blackhawk put a deposit down for the Texas and Montana miners and then informed Coin Miner that it could sell the miners. Blackhawk agreed to sell the miners to Coin Miner for $395,655. Blackhawk issued an invoice to Coin Miner, which then issued an invoice to Columbia River for $215 a unit. The invoice from Blackhawk didn't guarantee a delivery date, but Jon Demko, Coin Miner's chief operations officer, says that Blackhawk told him that the miners would be "ready by Easter," which was April 21, 2019. Dkt. 114-6 (Demko Dep. 40:18–19). Columbia River is not identified on Blackhawk's invoice to Coin Miner, and Blackhawk had no dealings with Columbia River.

Columbia River wired $436,235 to Coin Miner, which then wired $395,655 to Blackhawk on April 15, 2019. On April 25, AM Consulting notified Blackhawk that it could not deliver the miners from Texas, so AM Consulting refunded that portion of Blackhawk's deposit. Blackhawk didn't tell Coin Miner at the time that the Texas miners wouldn't be delivered.

Columbia River and Coin Miner grew impatient after the missed delivery date. On May 5, Demko wrote to Carnes, "If we do not have information on both shipments coming

tomorrow, we will have to take further action." Later the same day, Demko wrote, "I just need answers. Time's up."

On May 7, Blackhawk initiated shipment of approximately 1,000 miners from Montana to its warehouse in Wisconsin. Blackhawk didn't tell Coin Miner about the shipment, Blackhawk says, because it believed that Coin Miner wasn't interested in a partial shipment. Instead, Carnes told Demko that he had been "trying to pull this deal together for three weeks, but just cannot." Blackhawk offered to issue a refund, but Coin Miner rejected that offer at Columbia River's direction, writing, "[n]o refund is to be sent" and that the "legal team would take it from here."

On May 8, Blackhawk received an email from Columbia River's counsel, threatening legal action unless Blackhawk delivered the miners by the next day. Blackhawk didn't meet that deadline.

Blackhawk sold the Montana miners to a company called T & P Associates for a higher price than Coin Miner had paid. As it turns out, Columbia River ended up purchasing those miners from another third party that charged Columbia River a higher price per unit.

## ANALYSIS

The court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. The core question before the court is whether Columbia River has any claim against defendants Blackhawk and Carnes.

### A. Breach of contract

A breach of contract claim requires proof of three things: (1) the existence of an enforceable contract; (2) a breach of that contract; and (3) damages. *See Brew City Redevelopment*

4

*Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 714 N.W.2d 582.[2] In this case, it is undisputed that Columbia River and Blackhawk didn't enter into a contract. In fact, Columbia River had no communication with Blackhawk before Columbia River wired the money for the miners to Coin Miner. Rather, both Columbia River and Blackhawk dealt with Coin Miner, not each other.

In denying Blackhawk's motion to dismiss this claim, the court allowed Columbia River to proceed on the theory that Coin Miner was acting as Blackhawk's agent, so Blackhawk might be liable under the agreement between Columbia River and Coin Miner. Dkt. 44, at 2. But Columbia River hasn't adduced any evidence to support that theory.

Columbia River concedes that Coin Miner and Blackhawk didn't have an agency agreement. Although a written contract isn't required, Columbia River must show that Coin Miner and Blackhawk's relationship was based on an agreement between the parties that embodies three factual elements: (1) "conduct of the principal showing that the agent is to act for him or her"; (2) "conduct of the agent showing that he or she accepts the undertaking"; and (3) an "understanding of the parties that the principal is to control the undertaking." Wis JI—Civil 4000. The Wisconsin Supreme Court has more generally described agency as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Lang v. Lions Club of Cudahy Wisconsin, Inc.*, 2020 WI 25, ¶ 28, 390 Wis. 2d 627, 644, 939 N.W.2d 582, 591 (internal quotation marks omitted). Moreover, "when an independent

---

[2] The parties assume that Wisconsin law governs, so the court will do the same.

contractor has no fiduciary obligations to and is not subject to control by the principal, no agency relationship has formed." *Id.* at ¶ 29.

Columbia River doesn't argue that the relationship between Coin Miner and Blackhawk meets the above standard, and doesn't even acknowledge that the standard is applicable. Instead, Columbia River simply says that an agency relationship can be inferred because Blackhawk was aware that Coin Miner was not the end buyer and because Blackhawk and Coin Miner "consulted" with each other on matters such as the timing of the delivery. But that is far from enough to show an agency relationship. Columbia River doesn't cite any evidence that Coin Miner and Blackhawk reached an understanding that Coin Miner would act on Blackhawk's behalf, much less that Blackhawk exercise any control over Coin Miner.

Columbia River also says that Blackhawk can be held liable under the doctrine of apparent authority. But, again, Columbia River ignores the applicable standard. To hold Blackhawk liable for Coin Miner's acts, Columbia River would have to show that Coin Miner and Blackhawk engaged in conduct that would justify a reasonable belief by Columbia River that Coin Miner was acting on Blackhawk's behalf. *See Pamperin v. Trinity Mem. Hosp.*, 144 Wis. 2d 188, 203, 423 N.W.2d 848 (1988). Columbia River doesn't allege that either Coin Miner or Blackhawk ever communicated to Columbia River that Coin Miner was representing Blackhawk in any capacity, and Columbia River hasn't otherwise identified any conduct that would support such a belief.

Columbia River hasn't identified any basis for holding Blackhawk liable under Columbia River's contract with Coin Miner. The court will grant summary judgment to Blackhawk on Columbia River's breach of contract claim.

**B. Unjust enrichment**

A claim for unjust enrichment has three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *Buckett v. Jante*, 2009 WI App 55, ¶ 9, 316 Wis. 2d 804, 812, 767 N.W.2d 376, 380. Columbia River contends that it has satisfied these elements because it indirectly conferred a benefit on Blackhawk when Coin Miner paid Blackhawk for the miners; Blackhawk appreciated the benefit by accepting payment; and Blackhawk has refused to refund Columbia River's money.

The court need not decide whether Columbia River has satisfied the above elements because "a claim for unjust enrichment does not exist when the subject of the claim is addressed by a valid and enforceable contract." *Roumann Consulting Inc. v. Symbiont Constr., Inc.*, No. 18-C-1551, 2019 WL 3501527, at *10 (E.D. Wis. Aug. 1, 2019) (citing *Cont'l Cas. Co. v. Wis. Patients Compensation Fund*, 164 Wis. 2d 110, 118 (Ct. App. 1991)). In this case, Columbia River has a contract with Coin Miner and has asserted a breach of contract claim against Coin Miner. No party is contending that the contract is invalid or unenforceable.

It is true that Columbia River doesn't have a contract *with* Blackhawk. But both this court and other courts in this circuit have held that the question is whether the dispute at issue is governed by *a contract*, not whether the plaintiff and the defendant have an agreement between them. *Roumann*, 2019 WL 3501527, at *10; *Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 WL 1470855, at *9 (W.D. Wis. May 15, 2007). After all, the doctrine of unjust enrichment is meant to act as a *substitute* for a contract claim, *see Watts v. Watts*, 137 Wis. 2d

7

506, 530, 405 N.W.2d 303, 313 (1987), not as a supplement for a plaintiff to invoke at its discretion.

Columbia River has a contract with Coin Miner that gives Columbia River a remedy for its loss, so Columbia River may not assert a claim for unjust enrichment. The court will grant Blackhawk and Carnes's motion for summary judgment on this claim.

### C. Conversion and civil theft

The tort of conversion requires the plaintiff to show that the defendant intentionally controlled or took property belonging to the plaintiff, without consent, and that the defendant seriously interfered with the rights of the plaintiff to possess the property. *H.A. Friend & Co. v. Prof'l Stationery, Inc.*, 2006 WI App 141, ¶ 11, 294 Wis. 2d 754, 763, 720 N.W.2d 96, 100. Columbia River's claim for civil theft under Wis. Stat. § 943.20(1)(b) has four elements: (1) the defendant has possession of money owned by the plaintiff; (2) the defendant used his business or office to transfer or retain the plaintiff's money; (3) the defendant acted without the plaintiff's consent; and (4) the defendant intends to convert the money to his own use.

Both of these claims fail for a simple reason: Blackhawk took money from Coin Miner, not Columbia River. Because both claims require the plaintiff to show that the defendant took money from the plaintiff, Blackhawk and Coin Miner are entitled to summary judgment on these claims.

Columbia River cites several cases for the proposition that a plaintiff may assert a claim for conversion or theft even when the defendant doesn't take the funds at issue directly from the plaintiff. But the facts of those cases do not bear any similarity to the facts of this case, and none of the cases addressed the question at issue here.[3] Specifically, none of the other cases

---

[3] *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC,* 929 F.3d 489, 496–97 (7th

involve the purchase of a product or service in which the buyer paid a third party to acquire the product and had no relationship with defendant.

The bottom line is that Columbia River doesn't cite any authority for the view that it still owned the funds at issue after it transferred them to Coin Miner and after Coin Miner paid Blackhawk. *See Wisconsin Masons Health Care Fund v. Sid's Sealants, LLC*, No. 17-cv-28-jdp, 2017 WL 3835343, at *2 (W.D. Wis. Aug. 31, 2017) ("When one party transfers money to a second party to complete a transaction or purchase, . . . the second party 'obtain[s] ownership' of the money.'"). So the court will grant summary judgment to Blackhawk and Carnes on these claims as well.

### D. Conclusion

Columbia River may be entitled to contract damages, but not from Blackhawk or Carnes. The case will proceed to trial on Columbia River's claim for breach of contract against Coin Miner and on Blackhawk and Coin Miner's cross claims against each other.

---

Cir. 2019) (concluding that contract didn't bar claims for conversion or civil theft against defendant's principal); *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.,* No. 12-C-154, 2012 WL 12929551, at *5 (E.D. Wis. July 27, 2012) (allowing plan sponsors of employee benefit plans to proceed on claims for conversion and civil theft when sponsors alleged that insurers took government reimbursement that plaintiffs should have received); *H.A. Friend & Co. v. Prof'l Stationery, Inc.*, 2006 WI App 141, ¶ 10, 294 Wis. 2d 754, 763, 720 N.W.2d 96, 100 (plaintiff stated a claim for civil theft by alleging that defendant took money from plaintiff's bank account); *State v. Kuhn*, 178 Wis. 2d 428, 434, 504 N.W.2d 405, 408 (Ct. App. 1993) (concluding that the state offered sufficient evidence of the defendant's intent to commit theft).

ORDER

IT IS ORDERED that:

1. Plaintiff Columbia River Technologies 1, LLC's motion for leave to amend its complaint, Dkt. 144, is GRANTED.

2. Columbia River's motion for leave to file a sur-reply brief, Dkt. 142, is GRANTED.

3. Columbia River's motion for partial summary judgment, Dkt. 85, is DENIED.

4. The motion for summary judgment filed by Blackhawk Group LLC and Timothy Carnes, Dkt. 94, is GRANTED. Carnes is DISMISSED from the case.

Entered September 9, 2020.

BY THE COURT:

_____
JAMES D. PETERSON
District Judge